No. 13,619.

## MONTGOMERY v. WASEM ET AL.

116  343
116  375
116  537
117    3
120  521
121  392
123  437
116  343
125  410
125  462
126  170
116  343
130  583
116  343
131  424
132  252
116  343
134  552
116  343
137  491
138  138
116  343
147  156
116  343
152   95
116  343
154  240
116  343
162  486

DRAINAGE.—*Assessment.*—*Injunction.*—In order that a suit to enjoin the collection of a drainage assessment may be maintained, it is not enough that the proceedings for the establishment of the drain may be irregular and voidable, but it must be made to appear that they are absolutely void.

SAME.—*Notice.*—*Collateral Attack.*—A notice by publication, given under section 2 of the drainage act of 1875 (1 R. S. 1876, p. 428), although not exactly as the statute prescribes, yet affording some notice to the persons interested, will be deemed sufficient as against a collateral attack upon the judgment.

SAME.—*Presumption as to Notice.*—Where there is an entry in the proceedings before the county commissioners in effect reciting that all the notices required by the statute had been given, it will be assumed, in the absence of a showing to the contrary, that the statute was fully complied with.

SAME.—*Injunction.*—*Acquiescence.*—*Estoppel.*—A land-owner who stood by, with full knowledge and without objection, while a contractor expended his money in the construction of ditch allotments let to him in a proceeding instituted under the drainage act of 1875, can not, after the completion of the work and after the amount due therefor has been placed on the tax duplicate for collection, avail himself of a mere irregularity to enjoin the collection of the assessment.

SAME.—*Act of 1875.*—*County Commissioners.*—*Right to Accept Work at Called Session.*—Under section 12 of the act of 1875, the county commissioners had power to accept at a called session the work performed by a contractor, and the acceptance is conclusive, as against a suit for an injunction by a land-owner against whom an allotment was made, upon the question of the completion of the work.

SAME.—*Injunction.*—*Tender.*—*Offer to do Equity.*—An injunction to restrain the collection of an amount charged against land in favor of a contractor who performed work under the drainage act of 1875, which work was accepted by the proper officers as completed, will not lie where something is due the contractor, unless the money equitably due is tendered and brought into court, if the amount is known, or, if the amount is uncertain, an offer to do equity is made.

INJUNCTION.—*Ministerial Officer.*—A ministerial officer, who is lawfully engaged in executing an order made by a court having jurisdiction of the proceeding in which the order is made, can not be enjoined.

From the Posey Circuit Court.

*W. P. Edson, J. E. McCullough* and *J. H. Miller,* for appellant.

*A. P. Hovey* and *G. V. Menzies,* for appellees.

ZOLLARS, J.—A drain was established by the board of commissioners of Posey county under the act of 1875. 1 R. S. 1876, p. 428. The allotments apportioned to the several land-owners along the line of the drain not having been worked by them, the work was let to appellee Virgil P. Bozeman. The work was accepted by the county board as completed, and the auditor issued to Bozeman a certificate for the sum due him, and entered the amount of the certificate upon the tax duplicate against the several tracts of land against which allotments of work were made by the viewers. The treasurer has the tax duplicate in his hands, and is threatening to collect the amount charged against lands owned by appellant. He instituted this suit against the treasurer, and Bozeman, the contractor, to obtain an injunction against the collection of the assessment or tax.

Of the objections to the proceedings discussed by appellant's counsel, that first in the natural order is, that no notice was given of the pendency or prayer of the petition for the establishment of the drain.

The suit is clearly a collateral assault upon the proceedings of the county board in the establishment and construction of the drain. In order that the suit may be maintained, it is not enough that those proceedings may be irregular and voidable. It must be made to appear that they are absolutely void.

Section 2 of the act above provides that after the filing of the report by the viewers the county auditor shall cause notice to be given by publication for four successive weeks in some newspaper, etc., and by posting three printed copies of said notice in three public places in the township where the proposed work is located, and one at the court-house in the county, of the pendency and prayer of the petition, and the

time set for the hearing, which notice shall contain a perti-
nent description of the terminus of such proposed work, its
direction and course from its source to its outlet, and the
names of the owners of the lands that will be affected
thereby, etc.

It is recited in the bill of exceptions that appellant read
from the files a copy of a notice which was published in a
newspaper, as follows:

"Notice is hereby given that the report of the viewers ap-
pointed at the June term, 1877, of the commissioners' court
of Posey county, Indiana, to view a route for a ditch, as fol-
lows, to wit:" (here follows a description of the route of the
ditch) "benefiting, according to the report of the viewers,
the following named persons:" (here follow the names of
the parties benefited according to the report)," has been filed
by said viewers, and will be heard, determined and acted
upon on the 5th day of December, 1877, it being the 3d day
of the December term, 1877, of said court; parties interested
will therefore take notice.		ALFRED D. OWEN,
				"Auditor of Posey County."

It is contended that this notice is not sufficient, for the
reason, as counsel say, that it is not a notice of the pendency
and prayer of the petition, but of the pendency of the re-
port of the viewers.

The words of the statute are that the auditor shall give
notice of the pendency and prayer of the petition, and the
time set for the hearing, but it is apparent that the report
of the viewers is to be heard and passed upon at such hear-
ing, and hence the notice must contain, amongst other things,
the names of the owners of lands that will be affected by the
work, and they can only be known by a reference to the re-
port of the viewers. And so, the notice must contain a per-
tinent description of the terminus of such proposed work,
its direction and course from its source to its outlet. That
can only be ascertained with accuracy by a reference to the
report of the viewers, because they may vary the location of

the drain from that described in the petition. See section 21 of the act. At that hearing any person interested may file a remonstrance against the report. Section 5.

While the notice copied in the record is not exactly as the statute prescribes, it is evident that any person seeing it would readily understand therefrom that a petition for the construction of a drain is pending before the board. To say the least, the notice given was some notice.

Appellant read in evidence an entry from the record of the proceedings of the county board, made after the time set for the hearing of the petition and the report of the viewers, as follows:

" Which report having been publicly read, and no person objecting thereto, and the board having duly examined the same and the matters and things therein contained, and being satisfied that said ditch is necessary and will be conducive to the public health of those who reside on and near the same, and of public benefit and utility, and that the same had been duly advertised according to law, it is therefore ordered, adjudged and decreed by said court that said proposed ditch and public work be established to the same depth, width and length as specified by the report of the viewers as heretofore returned and filed herewith."

Nothing further is shown as to whether or not the auditor gave notice by posting as the statute requires. The above entry, however, is a sufficient finding and showing that such a notice was given. In other words, it shows that, after an examination, the board was satisfied that all of the notices required by the statute had been given. Such being the case, we must assume that the posted notices were in all respects in compliance with the statute. There is no attempt at proof to the contrary.

When some notice is given, although defective, the orders of the board based upon such notice are invulnerable as against a collateral attack. It was the duty of the board, before proceeding in the case, to determine whether or not the

proper notice had been given. It is well settled, that where the jurisdiction of an inferior court depends upon a fact which such court is required to ascertain and settle by its decision, such decision is conclusive as against a collateral attack. *Muncey* v. *Joest,* 74 Ind. 409 ; *Argo* v. *Barthand,* 80 Ind. 63 ; *Marshall* v. *Gill,* 77 Ind. 402 ; *Jackson* v. *State, etc.,* 104 Ind. 516, and cases there cited ; *Forsythe* v. *Kreuter,* 100 Ind. 27 ; *Young* v. *Wells,* 97 Ind. 410 ; *McMullen* v. *State, etc.,* 105 Ind. 334 ; *Carr* v. *State, etc.,* 103 Ind. 548 ; *Updegraff* v. *Palmer,* 107 Ind. 181 ; *Deegan* v. *State, etc.,* 108 Ind. 155 ; *Carr* v. *Boone,* 108 Ind. 241 ; *Baltimore, etc., R. R. Co.* v. *North,* 103 Ind. 486 ; *Ricketts* v. *Spraker,* 77 Ind. 371 ; *Pickering* v. *State, etc.,* 106 Ind. 228 ; *Breitweiser* v. *Fuhrman,* 88 Ind. 28 ; *Heagy* v. *Black,* 90 Ind. 534.

It is further claimed by counsel for appellant, that the contract for the construction of the work, between the county auditor and Bozeman, was void for the reason that it was a single contract to construct the whole work allotted to thirty-nine different persons ; in other words, that the work for the whole line of the drain was let to Bozeman by one contract.

Without deciding, it may be conceded, for the purpose of disposing of appellant's contention, that the statute, section 12 of the act, *supra,* contemplates a separate letting of the work allotted to each land-owner, and yet the letting of the whole was nothing more than an irregularity.

We are clearly of the opinion that the letting of the several allotments in one contract did not render the contract absolutely void. Appellant had full knowledge that the ditch was being constructed by Bozeman under the contract, and that he was expending his money in constructing it, and took no legal steps to stop the work or question the proceedings of the county board until this suit was commenced, several months after the work was accepted by the board as completed, and after the certificate by the auditor, as provided by section 12, *supra,* had been delivered to Bozeman, and the amount due him from the several land-owners had

been placed upon the tax duplicate for collection. Having thus stood by, and in silence as to the contract, appellant can not now, in this collateral attack, overthrow the contract and thus escape payment. *City of Lafayette* v. *Fowler,* 34 Ind. 140; *Muncey* v. *Joest, supra; Hellenkamp* v. *City of Lafayette,* 30 Ind. 192; *Peters* v. *Griffee,* 108 Ind. 121; *City of Logansport* v. *Uhl,* 99 Ind. 531; *Flora* v. *Cline,* 89 Ind. 208; *Nevins, etc., Co.* v. *Alkire,* 36 Ind. 189; *Cauldwell* v. *Curry,* 93 Ind. 363.

We have examined the other objections urged to the contract, and, without further elaboration, have no hesitancy in holding that it is not void for uncertainty.

We come now to the question upon which appellant's counsel have thrown the weight of their argument, and that is, that the auditor had no authority, under section 12 of the act, *supra,* to issue to Bozeman a certificate, nor to place the amount of the same upon the tax duplicate, until after the work had been properly accepted; that the board of commissioners accepted the work at a called session, and that the work could not properly be accepted at the time it was, first, because it had not been completed in accordance with the contract, and second, because the board could not accept it at a called session. It is conceded that if the work had been accepted at a regular session of the board, that would have been conclusive, upon the question of its completion, against appellant, in a collateral attack, such as this suit is. But it is contended, in the first place, that the Legislature, in the enactment of the above statute, did not intend that the work might be accepted at a called session.

This contention is based upon the assumption that the acceptance of the work in such a case is a judicial act, which can not be performed so as to bind interested parties, such as the land-owners affected by the ditch are, without notice to them, and the supposed unreasonableness of requiring such parties to watch for and take notice of such called sessions; and, second, that the Legislature could not confer

authority upon the board of commissioners to accept such work at a called session, without additional notice to such interested persons of the time of such called session, and the contemplated acceptance of the work.

It will not be necessary for us to decide all of the questions discussed by counsel, as we have concluded that the judgment must be affirmed on account of infirmities in appellant's case not heretofore noticed.  This much, however, may be said, that, looking to the whole of the act, *supra*, we think that it can not be said that the Legislature did not intend that the work might not be accepted by the board of commissioners at a called session.  It is provided in the 12th section of the act, that the work may be accepted from the contractor as completed, by the board of commissioners, "if in session," or by the county auditor in vacation.  It can not be said with reason, that the Legislature, having enacted that the auditor might accept the work in vacation, intended that the board of commissioners might not do so at a called session.

It has been decided more than once that an acceptance of the work by the board of commissioners, or by the auditor, is conclusive that the work has been completed, as against a collateral attack by a suit for an injunction by a land-owner against whose land an allotment was made.

In the case of *Muncey* v. *Joest, supra*, one of the causes relied upon for an injunction against the collection of the amount charged against land in favor of the contractor who did the work under the above act was, that the contractor had not completed the ditch as laid out and established.  In reference to that it was said: " By section 12 of the ditching law, the duty of determining whether the ditch has been constructed according to contract is expressly devolved upon the board of commissioners.  It is well settled that, where a matter is submitted to an inferior tribunal for decision, courts can not, in actions for injunction, usurp the functions of such tribunal, nor can the judgment of such tribunal be col-

laterally impeached upon the sole ground that there was a failure in the performance of a contract."

In the case of *Simonton* v. *Hays,* 88 Ind. 70, the land had been sold, and the action was to set aside the sale upon the ground, amongst other reasons, that the contractor did not properly perform the work, and that the drain, notwithstanding the fact that it was imperfectly made, was accepted by the auditor. Upon the ground thus urged, the court said : " So, the power to decide when the work was completed and to accept it was given by the statute to the commissioners or the auditor, the means of arriving at the conclusion not being prescribed. * * The auditor had authority to act; his action was not void. In consequence of the acknowledged failure of the land-owner to perform the work apportioned to her land, it was let to a contractor by the officer authorized to do so. The proper officer accepted the work as complete, issued a certificate for the amount stipulated in the contract, and placed that amount against the land chargeable therewith on the tax duplicate, and the amount was collected as taxes are collected, by the sale of the land.

" It is not necessary here to decide as to the extent of the rights of the purchaser at the tax sale. * * * But the land-owner, without showing that she has paid anything for the work done on her land, or offering to pay anything, or showing that the land was sold without authority, seeks in a collateral way, by a suit in equity, to question the decision of a competent authority, on the ground that the work was not done according to the contract. That this question can not be collaterally raised, was decided in *Muncey* v. *Joest,* 74 Ind. 409, 414."

The case of *Cauldwell* v. *Curry, supra,* was an application for an injunction restraining the collection of a ditch assessment. It was said : " Where some part of a tax or assessment is due, no suit for injunction can be maintained without a tender of that part which is due." *Muncey* v. *Joest, supra; Stilz* v. *City of Indianapolis,* 81 Ind. 582; *Simonton*

v. *Hays, supra.* To the same effect, see *Baker* v. *Clem,* 102 Ind. 109, 114.

These cases, and others like them that might be cited, are grounded, in part, upon the well established equitable rule that he who asks equity must do equity.

In the case before us, neither appellant nor the person from whom he purchased the land did the work allotted to it. Bozeman, the contractor, did work and expended his money in the construction of the ditch. That is conceded in the complaint, and shown by the evidence. Upon appellant's showing, something is due Bozeman on account of the work and money expended by him, but appellant has neither tendered any amount, nor in any way offered to pay any amount that may be found due from him to Bozeman. Upon the authority of the above cited cases, without such tender or offer, he can not upon the facts in the case maintain a suit for an injunction against the collection of the amount charged against him. Having reached this conclusion, it is not necessary for us to decide what remedy he may have if the ditch was in fact not completed according to the contract, nor whether or not he has any remedy.

The judgment of the court below, being in accord with this opinion, is affirmed, with costs.

Filed Feb. 18, 1888.

## On Petition for a Rehearing.

ELLIOTT, J.—In so far as the appellant's complaint challenges the sufficiency of the notice it is unquestionably a collateral attack, and as there is some notice, and that notice has been adjudged sufficient by the tribunal invested in the first instance with the authority of determining jurisdictional facts, the attack is unavailing. This has been the steady ruling of this court since the case of *Evansville, etc., R. R. Co.* v. *City of Evansville,* 15 Ind. 395. In addition to the many cases cited in our former opinion, we cite *Prezinger* v. *Harness,* 114 Ind. 491 ; *Adams* v. *Harrington,* 114

Ind. 66; *Hackett* v. *State, etc.,* 113 Ind. 532; *Ely* v. *Board, etc.,* 112 Ind. 361; *Kleyla* v. *Haskett,* 112 Ind. 515; *Hume* v. *Conduitt,* 76 Ind. 598.

There was, we must conclude upon the strength of this long settled rule, authority to hear and determine the original case submitted to the court for judgment, and, of course, the judgment is invulnerable, no matter how many errors and irregularities may have intervened, as against a collateral attack.

Another consequence follows from the rule we have stated, and that is this: There was some authority for the proceedings of the commissioners and officers, and these proceedings were not wholly destitute of validity. The case is, therefore, very easily discriminated from one in which there is an entire absence of authority. If there had been no attempt to proceed under the law, or an utter want of jurisdiction, we should have before us a case of a different class, but there was an attempt to proceed under the law and there was jurisdiction.

It is said, in the very able brief on the petition for rehearing, that as there is no mode of attacking the acts of the auditor, it necessarily results that injunction will lie. But we think this proposition does not meet the point which obstructs the appellant's way to success. As we understand the record, the auditor did not perform an independent ministerial act, but simply executed, as it was his duty to do, the order of the commissioners' court. A ministerial officer, who is engaged in executing an order of court, and obeys the order, can not be enjoined, nor can an officer who does what the law commands be restrained by injunction. *Smith* v. *Myers,* 109 Ind. 1. To be sure, the order must be made in a case where there is jurisdiction, and the officer must do rightfully what it directs. Here there was a prior order which authorized the auditor to do the act of which appellant complains, and the only question is whether he so far disobeyed the law as to render void the entire assessment. It

may well be doubted whether, in any case, where a discretion is committed to an officer, his acts can be impeached without proving fraud or mistake. If the auditor erred in the mode of awarding the contract, or erred in determining that the work was completed, it may well be doubted whether such errors could be corrected by judicial intervention after the work was done, since official discretion is seldom controlled by the courts. *Davis* v. *Lake Shore, etc., R. W. Co.,* 114 Ind. 364; *Weaver* v. *Templin,* 113 Ind. 298; *Leeds* v. *City of Richmond,* 102 Ind. 372; *City of Kokomo* v. *Mahan,* 100 Ind. 242; *Anderson* v. *Baker,* 98 Ind. 587; *Ricketts* v. *Spraker,* 77 Ind. 371; *City of Fort Wayne* v. *Cody,* 43 Ind. 197; *Mayor, etc.,* v. *Roberts,* 34 Ind. 471; *Smith* v. *Corporation of Washington,* 20 How. 135; *Davis* v. *Mayor,* 1 Duer, 451.

But we do not deem it necessary to decide how far the commissioners or the auditor were vested with discretionary powers, for we think it enough to affirm that there was jurisdiction in the original proceedings, that there was authority of law to execute the original judgment, and that the officers assumed to proceed under the original judgment and subsequent order. Having affirmed these facts to exist, we come to the controlling question, and that is this: Can the land-owner, after the completion of the work, escape payment of the benefits without tendering, or offering to tender, the amount which in equity the contractor should receive? It is settled in analogous cases, that where a tax has been levied, although the officers have not done their duty, the amount admitted to be owing must be tendered and brought into court; but if the amount can not be ascertained, and that fact is sufficiently pleaded, there may be an offer to do equity. This offer, however, will not be sufficient unless it clearly appears that no tender can be fully made, for where a tender can be made it must be a legal tender, with all its incidents. *Morrison* v. *Jacoby,* 114 Ind. 84. In this case

we have, as fully as in any of the cases cited in the original opinion, the foundation for a valid and enforceable assessment, and there is no conceivable reason why the plaintiff, who seeks to avoid payment of the lien, should not have the same rule applied to him as in other assessment cases. The cases do apply that rule, and, as we are well satisfied, do rightly apply it to drainage assessments. *Prezinger* v. *Fording*, 114 Ind. 599; *Prezinger* v. *Harness*, 114 Ind. 491.

But we have in this case another element of controlling importance, and that is the fact that the appellant, with notice of the work, suffered it to go on to completion without objection. As we have said, there was jurisdiction, and an assumption of authority under the law, and this failure of the appellant to object operates as an estoppel. This question was presented in a drainage case, that of *Peters* v. *Griffee*, 108 Ind. 121, much as it is here, and it was held that the land-owner was estopped. Many authorities are there cited, and the later case of *Prezinger* v. *Harness*, *supra*, follows and applies the rule there laid down. In the earlier case of *Flora* v. *Cline*, 89 Ind. 208, the rule was applied in a drainage case. In *Taber* v. *Ferguson*, 109 Ind. 227, and in *City of Logansport* v. *Uhl*, 99 Ind. 531, authorities are collected and examined, and the same general rule declared and enforced. In *Ross* v. *Stackhouse*, 114 Ind. 200, the question was again considered and decided, and in *Davis* v. *Lake Shore, etc., R. W. Co., supra*, the rule was declared to be established and to be applicable to cases in principle the same as the one under examination.

As decided in the *Indianapolis, etc., R. W. Co.* v. *State, ex rel.*, 105 Ind. 37, and *Hackett* v. *State, etc.*, 113 Ind. 532, the original order still remained and was not vitiated by the errors and irregularities in the subsequent proceedings, so that there was a sufficient foundation for the proceedings, and, as the work was done under them, the presumption, in the absence of countervailing facts, must be that some benefit

accrued to the land-owners. This is the theory upon which the decision in *Baker* v. *Clem*, 102 Ind. 109, proceeds, and we have no doubt that it is the true one.

The fact that a judgment was entered directing that a ditch be constructed and that assessments be levied, implies, in itself, that the land-owners would be benefited by its construction. The right of the commissioners to make the order for the assessment depends upon the benefit to land-owners, and it must be presumed that these sworn officers did their duty, and from this presumption results the conclusion that appellant's land was benefited. This presumption makes a *prima facie* case, and a *prima facie* case stands until overthrown. *Louisville, etc., R. W. Co.* v. *Thompson*, 107 Ind. 442 ; *Bates* v. *Pricket*, 5 Ind. 22.

It is important to keep in view the fact that title to land is not in question in such cases as this, and that the ultimate question is, shall the assessment be paid ? If title passed without sale immediately upon the completion of the assessment, it could be much more forcibly insisted that it would be proper to apply the old rule that some of the courts enforce in cases of tax titles ; but, in such a case as the one before us, title does not pass until after sale at public outcry, or, at least, until after public notice, so that the question is not whether the contractor shall take title at once, for the question is whether he shall recover compensation for his work. It is evident, therefore, that the controlling rule we lay down here, and have laid down in other cases is, that a land-owner may, by standing by in silence, estop himself from repudiating the assessment, not that he may estop himself from defending his title. Before the question of title comes in issue other steps must be taken, but even in cases where title does come in issue it is no more than just that he who asks equity should do equity by paying the man who has done the work the value represented by the benefit which the owner's land receives. After all, whether title be in issue or not, the

simple question is whether the land-owner, who stands by, shall be estopped from avoiding tender or payment of compensation.

